UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOANN MITCHELL, as the administratrix of the Estate of DAVIEON WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH HEADLEY,<br>JEFFERSON DUNN,<br>GRANTT CULLIVER,<br>WILLIE M. BURKES, and<br>WALTER POSEY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:18-cv-769-EC-WC<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT AND NOTICE OF SUBSTITUTION

Plaintiff Joann Mitchell, Administratrix of the Estate of Davieon Williams, deceased, ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. §1983 arising from the death of Davieon Williams at Elmore Correctional Facility.

### INTRODUCTION

1. On August 30, 2016, Davieon Williams was murdered at Elmore Correctional Facility. He was twenty-four (24) years old at the time of his death.

2. For several years, up to and including the date of Mr. Williams's death, pervasive violence plagued Elmore Correctional Facility.

3. Around the time of Mr. Williams's death, the Alabama Department of Corrections was experiencing one of the highest prison homicide rates in the nation.

4. The Alabama Department of Corrections, by its own account, maintained grossly overcrowded and understaffed prisons, including Elmore Correctional Facility at the time of Mr. Williams's death.

5. The deceased is survived by his two (2) minor children and his grandmother Joann Mitchell, who is the administratrix of his estate.

## JURISDICTION AND VENUE

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, because the claims herein arise under the Constitution, laws, or treaties of the United States.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims presented in this case occurred in Elmore County, Alabama.

## PARTIES

8. Plaintiff Joann Mitchell is Davieon Williams's grandmother and the administratrix of his estate. The Plaintiff's deceased grandson, Davieon Williams, was incarcerated at Elmore Correctional Facility where he was stabbed to death by another prisoner on August 30, 2016. The Plaintiff is over the age of nineteen (19) years old and is a resident of Lafayette, Chambers County, Alabama, which is within the jurisdiction of this Honorable Court.

9. Defendant Joseph Headley ("Headley" or "Defendant Headley") is a citizen of Alabama and over the age of nineteen (19) years old. Defendant Headley was the Warden at Elmore Correctional Facility at the time Mr. Williams was stabbed to death and in the months preceding his murder. Defendant Headley had final responsibility for the day-to-day operations at Elmore Correctional Facility. At the time of Mr. Williams's death, Defendant Headley was on notice of the dangerous, life-threatening conditions at the prison, including the prevalence of

violence and deaths, understaffing, and overcrowding.  Defendant Headley knew that prisoners housed at Elmore Correctional Facility were subject to a substantial risk of serious harm from violence as described in this First Amended Complaint, but he deliberately ignored the known serious risks of harm to prisoners.  Moreover, Defendant Headley exacerbated the level of violence at Elmore Correctional Facility by allowing significantly overcrowded dormitories to remain grossly understaffed and by allowing prisoners to possess dangerous contraband in those dormitories.  Finally, Defendant Headley specifically knew of the risk of harm to Davieon Williams, because he knew of the earlier altercation between Jonathan Gladney and Mr. Williams on the same day of Mr. Williams's death.  Defendant Headley is sued in his individual capacity.

10. Defendant Jefferson Dunn ("Dunn" or "Defendant Dunn") is a citizen of Alabama and over the age of nineteen (19) years old.  Defendant Dunn was the Commissioner of the Alabama Department of Corrections ("ADOC") at the time Mr. Williams was killed on or about August 30, 2016.  In April 2015, Defendant Dunn was appointed the Commissioner of the ADOC.[1]  Defendant Dunn is responsible for exercising the authority, functions, and duties of the Commissioner of the ADOC including the appointment of personnel and employees within the ADOC required for the performance of the ADOC's duties towards the prisoners it incarcerates.  Those duties include operating a prison system that respects the constitutional and human rights of persons within the custody of the ADOC, including the rights belonging to Mr. Williams while he was a prisoner at Elmore Correctional Facility.  Defendant Dunn is sued in his individual capacity.

---

[1] There are relevant allegations in this First Amended Complaint that predate Commissioner Dunn's tenure with the Alabama Department of Corrections.  He was appointed as the Commissioner in April 2015.

3

11. Defendant Grantt Culliver ("Culliver" or "Defendant Culliver") is a citizen of Alabama and over the age of nineteen (19) years old. At the time Mr. Williams was killed at Elmore Correctional Facility, Defendant Culliver was the Associate Commissioner of Operations for the ADOC. He was responsible for overseeing the daily operations at the ADOC's correctional facilities housing men including Elmore Correctional Facility where Mr. Williams was housed in August 2016. At the time of Mr. Williams's death, Defendant Culliver was on notice of the dangerous, life-threatening conditions at Elmore Correctional Facility, including the prevalence of violence, understaffing, and overcrowding. Defendant Culliver knew that prisoners housed at Elmore Correctional Facility were subject to a substantial risk of serious harm from violence as described in this First Amended Complaint, but he deliberately ignored the known risk of serious harm to prisoners. Defendant Culliver is sued in his individual capacity.

12. Defendant Willie M. Burkes ("Burkes" or "Defendant Burkes") is a citizen of Alabama and over the age of nineteen (19) years old and was previously named incorrectly in this case as "Correctional Officer Burt."[2] Defendant Burkes was assigned to work in the dormitory in which Mr. Williams was killed on the date of his death and failed to prevent the stabbing. Defendant Burkes is sued in his individual capacity.

13. Defendant Walter Posey ("Posey" or "Defendant Posey") is a citizen of Alabama and over the age of nineteen (19) years old. Defendant Posey was assigned to work as a correctional officer in the dormitory in which Mr. Williams was killed on the date of his death and failed to prevent the stabbing. Defendant Posey is sued in his individual capacity.

---

[2] This paragraph is amended in keeping with the Court's scheduling order to reflect the correct name of the Defendant previously misidentified as "Correctional Officer Burt." Defendant Burkes's correct name has been determined following the service of initial disclosures by the Defendants.

4

**STATEMENT OF FACTS**

**I.   OVERCROWDING, UNDERSTAFFING, AND VIOLENCE THROUGHOUT ADOC FACILITIES**

14.   The United States Constitution guarantees that all persons within the custody of the ADOC have a right to be housed in safe conditions and not be subjected to violence.

15.   For years, understaffing has been a persistent, systemic problem that leaves many ADOC facilities including Elmore Correctional Facility incredibly dangerous and out of control.

16.   The 2015 calendar year was one of the deadliest in the ADOC's history. From February 2015 through November 2015, seven (7) people were killed in the Alabama state prison system.

17.   At the end of 2015 Defendant Dunn acknowledged that the ADOC would face violent consequences from prison overcrowding and understaffing.

18.   Between September of 2015 and September 2016, the number of correctional officers assigned to the ADOC's prisons declined twenty percent (20%).

19.   In October of 2016, two (2) months after Mr. Williams was killed, only 53% of the correctional officer positions within the ADOC were filled. ADOC spokesperson Bob Horton gave some historical context to the ADOC's ongoing problems with understaffing: "[t]he Alabama Department of Corrections has a critical shortage of corrections officers...Since 2012, the number of DOC officers has dropped by 20 percent and the rate of violent incidents has increased exponentially."

20.   For its 2016 Fiscal Year,[3] the same year Mr. Williams was murdered at Elmore Correctional Facility, the ADOC reported 1,345 prisoner on prisoner assaults, 636 prisoner on

---

[3]   The ADOC's 2016 fiscal year spanned from October 1, 2015 through September 30, 2016, which is inclusive of the date of Mr. Williams's murder on August 30, 2016.

5

officer assaults, five (5) completed prisoner suicides, and a total of seven (7) people murdered (six (6) prisoners and one (1) correctional officer) throughout the prison system.

21. In its 2016 Annual Report, the ADOC lists "To ensure safe, humane and constitutional conditions of incarceration in all facilities[,]" including Elmore Correctional Facility, as one of its Department Priorities.

22. In its 2016 Annual Report, the ADOC also states, in its Department Values: "We value a safe, secure and rehabilitative environment for the inmate population."

23. Despite these professed values in its own policy statements and prior acknowledgement of forthcoming, violent consequences due to overcrowding and understaffing, violence that seemingly spiked in 2015 continued unabated throughout 2016 in ADOC prisons.

24. On October 6, 2016, the United States Department of Justice announced that it had opened a Civil Rights of Institutionalized Persons Act ("CRIPA") investigation into Alabama's male prisons, including Elmore Correctional Facility, less than two (2) months after Mr. Williams was stabbed to death by another prisoner while incarcerated.

25. In June of 2017, the United States District Court found that "ADOC facilities are significantly and chronically overcrowded." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1193 (M.D. Ala. 2017). The court's findings pertained to, in part, a time period inclusive of the time Mr. Williams was imprisoned at Elmore Correctional Facility.

26. The court further noted that "[t]he combination of overcrowding and understaffing leads to an increased level of violence, both because of the difficulty of diffusing tension and violence in an overcrowded open-dormitory setting, and because of the lack of supervision by correctional officers." *Braggs*, 257 F. Supp. 3d at 1200.

27. Defendant Dunn himself, in sworn testimony in the United States District Court for the Middle District of Alabama "aptly described the prison system as wrestling with a 'two-headed monster': overcrowding and understaffing." *Braggs*, 257 F. Supp. 3d at 1184.

28. Although Defendants Dunn and Culliver were well aware of a history of widespread violence throughout the ADOC's prisons housing men, the connection between violence and the ADOC's chronic problems with overcrowding and understaffing, neither Defendant Dunn nor Defendant Culliver took meaningful steps, through custom or policy, in 2015 or 2016 to significantly alter the numbers in ADOC's prisons which continued to show too many prisoners and not enough correctional officers. Thus, the recipe for violence in ADOC prisons was passed down year after year.

## II.   OVERCROWDING, UNDERSTAFFING, AND VIOLENCE AT ELMORE CORRECTIONAL FACILITY

29. Elmore Correctional Facility originally was built in 1981 and renovated in 1991. The prison's design capacity is approximately 600 prisoners. At the time of Mr. Williams's death the prison's census was almost double its design capacity.

30. Elmore Correctional Facility is a medium custody prison, and at the time of Mr. Williams's death, violent offenders totaled roughly fifty percent (50%) of the prison population.

31. Prisoners at Elmore Correctional Facility are often double-bunked, the officers' lines of sight inside the dormitories are limited, and this combination can lead to a higher risk of violent activity.

32. The pervasive culture of violence at Elmore Correctional Facility was widely known throughout the ADOC prior to Mr. Williams's murder.

33. For example, in July 2013, the Equal Justice Initiative complained to the ADOC of widespread physical abuse and other misconduct at Elmore Correctional Facility.

34. The ADOC began its own investigation in July 2013, into as many as ten (10) incidences of correctional officers using violent force against prisoners at Elmore Correctional Facility.

35. Later that year, in October 2013, Derrick Denis was stabbed to death by another prisoner at Elmore Correctional Facility.

36. Eight (8) prisoners were sent to Jackson Hospital in Montgomery, Alabama (three (3) were admitted for treatment) in March 2014, following prisoner on prisoner violence in the course of a riot in one of Elmore Correctional Facility's dormitories.

37. That same year, Correctional Officer Jeremy Walker assaulted a handcuffed prisoner at Elmore Correctional Facility in July 2014, and pled guilty to his criminal assault in May 2017, in the United States District Court for the Middle District of Alabama.

38. In November 2014, the Equal Justice Initiative publicly issued findings of "widespread abuse and corruption" in Alabama's prisons. Correctional officers were reportedly smuggling in contraband items creating a black market that stimulated violence in Alabama's prisons. Correctional officers and administrators at Elmore Correctional Facility were alleged to be involved in "prolonged patterns of violence."

39. By 2015, nearly 400 prisoners were held in each dorm at Elmore Correctional Facility, and bunk beds were being used to detain such a large population in a constricted area.

40. Leon Forniss, the Warden at Elmore Correctional Facility back in 2015, explained that outfitting dormitories at the prison with bunk beds was unsafe. The use of bunk beds prevented correctional officers from properly supervising the dormitories because of poor sightlines. Typically, there were only two (2) correctional officers supervising dormitories housing 392 prisoners.

41. In addition to the overcrowding and understaffing, the violence at Elmore Correctional Facility perpetuates year after year because its correctional officers continue to lack training and supervision needed to turn the tide of unrelenting violence inside prison walls.

42. In the month Mr. Williams was murdered, the ADOC reported that its correctional officer staffing rate at Elmore Correctional Facility was a mere 47.3% as the prison was only able to fill eighty (80) of the 169 authorized correctional officer positions. Meanwhile, the prisoner census at the prison hovered around 195% of capacity.

43. In August of 2016, in addition to Mr. Williams's death, Elmore Correctional Facility recorded thirteen (13) assaults for a total of seventy-two (72) at the facility eight (8) months into the year.

44. In an eighteen (18) month window from February 2015 through August 2016, there were three (3) prisoner homicides at Elmore Correctional Facility.[4]

45. Even after these unnecessary deaths, in September 2016, Elmore Correctional Facility still housed 1,186 prisoners in a facility designed to hold 600 prisoners exceeding design capacity by 198%.[5]

46. In its 2016 Annual Report, the ADOC revealed the Correctional Officer staffing level for Elmore Correctional Facility, inclusive of the date of Mr. Williams's death, was only 44.4%.

---

[4] In February 2015, William D. Shepherd was stabbed to death by another prisoner. In March 2016, Johnny Lee Spears was stabbed to death by another prisoner. And in August 2016, Mr. Williams was stabbed to death by another prisoner.

[5] *See* https://www.montgomeryadvertiser.com/story/news/politics/southunionstreet/2017/01/08/alabama-corrections-officers-ranks-drop-20-percent/95762920/.

47. In 2016, Defendant Dunn explained, "The systemic issues throughout the department directly correlate to serious overcrowding, understaffing, and outdated facilities...Elmore Correctional Facility is just one example of what the entire system faces."

48. At all times material to this action, contraband weaponry was readily available to prisoners at Elmore Correctional Facility, including but not limited to, the contraband weaponry Jonathan Gladney used to stab Mr. Williams to death.

49. Defendant Dunn had been briefed about overcrowding, correctional understaffing, and ongoing violence and threats of violence toward prisoners and correctional officers at Elmore Correctional Facility in the months leading up to Mr. Williams's death. Despite his knowledge of substantial risks of serious harm to prisoners at Elmore Correctional Facility, Defendant Dunn failed to act to prevent prisoners at Elmore Correctional Facility, including Mr. Williams, from suffering injury and death.

50. Defendant Culliver had been briefed about overcrowding, correctional understaffing, and ongoing violence and threats of violence toward prisoners and correctional officers at Elmore Correctional Facility in the months leading up to Mr. Williams's death. Despite his knowledge of substantial risks of serious harm to prisoners at Elmore Correctional Facility, Defendant Culliver failed to act to prevent prisoners at Elmore Correctional Facility, including Mr. Williams, from suffering injury and death.

51. Defendants Dunn and Culliver were aware of the significant, accelerated, and unprecedented decline in correctional officers assigned to ADOC prisons and the substantial risk of violence proximately caused by these conditions within Elmore Correctional Facility and other mens' prisons within the ADOC.

52. Defendant Headley had direct knowledge of overcrowding, correctional understaffing, and ongoing violence and threats of violence toward prisoners and correctional officers at Elmore Correctional Facility in the months leading up to Mr. Williams's death. Despite his knowledge of substantial risks of serious harm to prisoners at Elmore Correctional Facility, Defendant Headley failed to act to prevent prisoners at Elmore Correctional Facility, including Mr. Williams, from suffering injury and death.

53. Defendant Headley, on several occasions during his tenure as Warden, returned prisoners to the same housing unit at Elmore Correctional Facility after violent altercations in contravention to national correctional standards, department policy, the prison's accepted procedures, and common sense.

54. Defendant Headley was aware of other violent incidents occurring in the same housing unit in which Mr. Williams was killed.

55. Prior to Mr. Williams's death, Defendant Posey was aware of other violent incidents occurring at Elmore Correctional Facility.

56. Prior to Mr. Williams's death, Defendant Burkes was aware of other violent incidents occurring at Elmore Correctional Facility.

### III. DAVIEON WILLIAMS'S DEATH AT ELMORE CORRECTIONAL FACILITY

57. On the date of his death, Jonathan Gladney and Mr. Williams had been in a fist fight earlier the same day.

58. Mr. Williams and Jonathan Gladney initially were removed from the dormitory following this earlier fight, but soon thereafter were placed back in the same dormitory together.

59. Defendant Headley had ordered that he did not want prisoners switching dormitory assignments, thus Jonathan Gladney and Mr. Williams were assigned back to the same housing unit despite their earlier altercation that same day.

60. After the earlier fight and shortly before his death, Mr. Williams called his grandmother, Joann Mitchell (who is now the administratrix of his estate), and told her he feared for his safety and feared retaliation.

61. Administrative and correctional staff at Elmore Correctional Facility were aware of Mr. Williams's concerns for his safety, specifically, his fear of retaliation at the hands of Jonathan Gladney, on the day of his death.

62. Davieon Williams was repeatedly stabbed by fellow prisoner Jonathan Gladney in his dormitory at Elmore Correctional Facility on August 30, 2016.

63. At the time Jonathan Gladney began stabbing Mr. Williams with contraband weaponry, the dormitory in which both prisoners were housed was grossly understaffed, severely overcrowded, and Defendant Headley had notice of the prison's chronic understaffing of correctional officers and overcrowding of prisoners.

64. Correctional Officers were not available to prevent the stabbing, to halt the stabbing timely, or to rescue Mr. Williams timely to preserve his life.

65. The stab wounds Mr. Williams sustained at Elmore Correctional Facility resulted in his death on August 30, 2016. He was pronounced dead soon after the stabbing occurred.

66. Jonathan Gladney was indicted for the murder of Mr. Williams in the Circuit Court of Elmore County, Alabama, Case No.: CC-2017-000776.00.

67. The Defendants were deliberately indifferent in responding to the known security and safety hazards at Elmore Correctional Facility, even as the level of violence escalated.

68. Furthermore, the Defendants were on notice that the prisoner charged with killing Mr. Williams had a history of assault. He had been in a physical altercation with Mr. Williams earlier on the same day he killed Mr. Williams. Instead of taking reasonable precautions to prevent Jonathan Gladney from further harming Mr. Williams and other prisoners, Defendants continued to house him in an area of Elmore Correctional Facility that was significantly overcrowded, grossly understaffed, and into which they housed his eventual victim.

69. Defendants' actions and inactions proximately caused Mr. Williams's death, in violation of the Eighth Amendment to the United States Constitution. The Plaintiff seeks damages for Mr. Williams's death due to the deliberate indifference of the Defendants.

70. Defendants knew that Mr. Williams faced a substantial risk of serious harm in his housing unit at Elmore Correctional Facility both before and especially after his altercation with Jonathan Gladney earlier in the day on August 30, 2016.

71. Nevertheless, Defendants disregarded known risks to Mr. Williams's security and safety by housing him in an understaffed, overcrowded, and unsafe dormitory at Elmore Correctional Facility in which contraband weaponry was readily available.

72. Defendants failed to take reasonable measures to guarantee the safety of Mr. Williams.

**CAUSE OF ACTION**

**COUNT ONE**
Violation of Eighth and Fourteenth Amendments to the United States Constitution
and 42 U.S.C. § 1983
(Against All Defendants)

73. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

74. Defendants' policies, practices, acts, and omissions placed Davieon Williams at unreasonable and foreseeable risk of serious injury and death.

75. The Eighth Amendment imposes a duty of prison officials to protect prisoners from violence at the hands of other prisoners.

76. Defendants had at least the following duties:

    a. To see that measures were in place to reasonably ensure prisoners' safety, including the safety of Davieon Williams; and

    b. To attend to such measures and reasonably ensure prisoners' safety, including the safety of Davieon Williams.

77. Defendants breached these duties and were deliberately indifferent to Mr. Williams's needs in at least the following manner:

    a. Failing to protect Mr. Williams from serious risk of death at the hands of a foreseeable assailant;

    b. Failing to heed specific warnings regarding the risk of serious injury or death to Mr. Williams at the hands of a foreseeable assailant;

    c. Failing to adequately watch or supervise the housing unit where Mr. Williams was located;

    d. Failing to act quickly when the fight started to prevent injury to Mr. Williams;

    e. Failing to intervene and prevent Mr. Williams's death;

    f. Failing to remove contraband weaponry from Mr. Williams's housing unit; and

g. Failing to have policies and procedures in place, and/or by failing to adequately supervise or train employees in accordance with said policies and procedures, and/or by failing to attend to such policies and procedures so as to ensure the safety of prisoners such as Mr. Williams.

78. Defendants acted with deliberate indifference to the safety of Mr. Williams while he was incarcerated at Elmore Correctional Facility. As a consequence, Mr. Williams was incarcerated under conditions posing a substantial risk of serious harm and which ultimately caused his death.

79. Defendants' policies, practices, acts, and omissions constituted deliberate indifference to a serious risk of harm to Mr. Williams and constitute clearly-established violations of the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution. As a proximate result of Defendants' illegal and unconstitutional acts and omissions, Mr. Williams was left unprotected; was attacked; experienced grave physical, emotional, and psychological injury and pain; and died.

80. The Defendants' above-described actions were deliberate and in reckless disregard of the constitutional rights of Mr. Williams. Defendants' conduct warrants an award of punitive damages in an amount to be determined at trial. Punitive damages are necessary to deter future Eighth Amendment violations by these Defendants and at Elmore Correctional Facility.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays for the following relief:

(a) Assume jurisdiction over this action;

(b)     Grant the Plaintiff a trial by a struck jury;

(c)     Declare that the acts and omissions described herein violated Davieon Williams's rights under the Constitution and laws of the United States;

(d)     Enter judgment in favor of the Plaintiff and against each Defendant for all damages allowed by law;

(e)     Award the Plaintiff prejudgment and postjudgment interest at the highest rates allowed by law;

(f)     Award the Plaintiff the costs of this lawsuit and reasonable attorneys' and expert fees and expenses pursuant to 42 U.S.C. § 1988(b) & (c) and as otherwise allowed by law; and

(g)     Order such other and further relief as this Honorable Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by a struck jury.

Respectfully submitted on this the 21st day of November 2019,

**/s/ Anil A. Mujumdar**
Anil A. Mujumdar (ASB-2004-L65M)
*One of the Attorneys for the Plaintiff*

**OF COUNSEL:**
Gregory M. Zarzaur (ASB-0759-E45Z)
Denise Wiginton (ASB-5905-D27W)
Paul H. Rand (ASB-5595-O99N)
ZARZAUR
2332 2nd Avenue North
Birmingham, Alabama 35203
T: 205.983.7985
F: 888.505.0523
E: anil@zarzaur.com / gregory@zarzaur.com / denise@zarzaur.com / paul@zarzaur.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 21st day of November 2019, a copy of the foregoing document was served on all counsel of record via the CM/ECF system.

Benjamin Albritton
ALABAMA ATTORNEY GENERAL'S OFFICE
501 Washington Avenue
Montgomery, AL 36130
T: 334.353.4484
E: balbritton@ago.state.al.us
*Attorney for the Defendants*